UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT L. HAYES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:04-cv-1572-DFH-TAB |
| | ) |
| EXECUTIVE MANAGEMENT SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Robert L. Hayes has brought this suit against his former employer, Executive Management Services, Inc. ("EMS") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Hayes alleges that EMS violated his rights under Title VII by subjecting him to sexual harassment and terminating him in retaliation for complaining of such harassment. Hayes has also asserted state law claims for negligence, wrongful discharge, and intentional infliction of emotional distress against EMS as well. EMS has filed a motion for summary judgment as to each of Hayes's claims. For the reasons explained below, EMS's motion for summary judgment is granted.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Only genuine disputes over material facts can prevent a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  *Id.*

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party.  See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Conley v. Village of Bedford Park*, 215 F.3d 703, 708 (7th Cir. 2000).  "[B]ecause summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  The court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.*

Accordingly, the factual statements in this decision are not necessarily accurate but reflect the evidence in light of the summary judgment standard.

*Facts for Summary Judgment*

EMS has approximately 1300 employees and provides a wide range of commercial cleaning and janitorial services. Hayes was employed by EMS as a general cleaner from 1990 until his final termination from the company in 2003, though he left the company for short periods during this time. Hayes testified that he was terminated once within the first year of his employment. The parties also agree that Hayes left the company again in 1999, though they dispute whether he left voluntarily on that occasion. After his 1999 departure, Hayes was rehired by EMS on August 24, 1999 to work as a floater cleaner.

EMS assigned Hayes to work at an elementary school in 2002. The school's principal complained to EMS facilities supervisor Carey Burgher that, despite being told not to, Hayes gave students candy and money. Burgher reported the complaints to EMS human resources director Lorinda Lentz. Lentz reassigned Hayes to work at Sears–English Avenue, another of EMS's clients. After receiving complaints that Hayes was flirting with or otherwise behaving inappropriately toward Sears employees, EMS reassigned him again. Hayes denied flirting with other employees, though he testified that he engaged in some "clowning" with other employees at their initiation. Hayes Dep. at 62-65.

As of February 2003, Hayes reported to EMS Operation Manager Donzay Patterson, who reported to EMS General Manager Tony Gooding. During this period, Hayes was assigned to work primarily at Forum Credit Union Corporate Offices ("Forum") and Park Tudor School.

In July 2003, Lentz received a complaint from Julie Friddle, a member of the public who claimed to have had an exchange with Hayes at a local gas station. According to Lentz, Friddle reported that Hayes, while driving an EMS truck and wearing an EMS uniform, pulled into a gas station, cursed at Friddle, and said "Get the f*** out of the way," and "F*** you b****" to Friddle. Hayes denied making such statements and testified that Friddle challenged him and shouted at him but that he did not respond. Lentz Dep. at 25; Hayes Dep. at 66-69; Gannon Dec. ¶ 8, Ex.1.

Patterson and Gooding testified that Hayes's performance was unsatisfactory in 2003. Patterson testified that Hayes was sometimes uncooperative, but that he normally followed directions. Gooding testified that after a customer complaint from Forum, he noticed during an inspection that Hayes had failed to clean the bathroom properly, leaving toilet paper and debris in from of the restroom door. Gooding testified that when he spoke to Hayes about the debris, Hayes explained to him that an EMS supervisor had already mentioned it, but Hayes thought the supervisor should have cleaned it up. Patterson testified that Hayes repeatedly failed to clean the restrooms properly.

He refused to wring out his mop, which splashed water on walls and caused floors to remain wet for long periods, and failed to clean sinks and toilets thoroughly. Gooding testified that Hayes failed to wax floors properly at Park Tudor, leaving dirt and debris in the wax.

Hayes testified that Patterson took inappropriate actions toward him in late summer and early fall 2003 while the two were working at the Learning Universe Center. Hayes testified that during a conversation in which Hayes was telling another EMS employee how to get a knot out of his neck, Patterson came up behind Hayes, "goosed [Hayes] with his penis," and told Hayes he should have been a doctor. Hayes Dep. at 83. Hayes testified that when he told Patterson that his family had always recommended that he become a doctor, Patterson asked "Well, if I take my d*** out of my pants and put it in your hand, can you heal my d*** for me." *Id.* at 84. Hayes testified that the other employee laughed, and that Hayes continued his work. Hayes testified that he reported the incident to Lentz approximately one month later, in either September or October 2003. Lentz suggested that Hayes report the incident to Gooding, who, according to Hayes, responded that Patterson "was under a lot of stress" and that the comments were "just street talk." *Id.* at 89-91.

Hayes testified that immediately after his conversation with Gooding, which took place in Gooding's office with the door open, Patterson called Hayes into a conference room and told Hayes, "I'm getting rid of you because you're nothing but

-5-

a snitch." *Id.* at 93-94. Hayes testified that he reported Patterson's comments in the conference room to Kim White and Greg Kardatzke of the human resources department.[1]

Hayes reported that on another occasion, he was waiting for another employee to strip floors so that he could mop, and that, while he was standing with a mop in his hand, Patterson again "goosed" Hayes with his penis and grabbed the mop from his hands. *Id.* at 85-86. Hayes testified that another incident occurred when he left his work pager in a restroom and could not be reached. He testified that when Patterson located him, Patterson stated, "I've been trying to page you all night . . . take your ass home." Hayes also testified that on another occasion Patterson threw a set of keys at the ground in front of him instead of handing the keys to him. *Id.* at 86-89.

On October 29, 2003, White and Kardatzke discussed with Hayes concerns regarding his attitude and performance at work. Hayes testified that it was during this conversation that he reported to White and Kartdatzke that Patterson had called him a snitch, but he testified that he did not explain the context of the statement. White and Kardatzke noted that Hayes's file included multiple instances of discipline and complaints regarding his behavior, though Hayes disputes this. White informed Hayes that his new position as a floor technician

---

[1] Kim White is also referred to in the record as Kim Padgett. See Hayes Dep. at 105.

would be his "last opportunity" for employment with EMS and that he was expected to follow all instructions and generally improve his performance. *Id.* at 103-04. EMS has submitted documentation regarding the meeting and a warning given to Hayes, though he claims the signature on the document is not his own.

Hayes was then assigned to clean the floors at Park Tudor on or around October 29, 2003. Hayes testified that when he reported to Patterson at EMS, Patterson informed him that he "couldn't use" Hayes because Hayes had a back problem and sent him home with instructions to report to Lentz the next day. *Id.* at 109-10, 123, 131-32. Patterson testified that when Hayes showed up to work, he said his back hurt, so Patterson sent him to Lentz. Patterson testified that this was the last time he saw Hayes. Patterson sent Hayes to the human resources department to speak with Lentz, who had been informed by White that Hayes had been warned that the floor technician position would be his last chance with EMS.

Lentz testified that she learned from Patterson that, at the last minute, Hayes reported that his back hurt, which she interpreted as a refusal to do the job assigned. She testified that she reviewed Hayes's employment file, which included documentation of multiple incidents of discipline. She also considered the incidents at the elementary school and the incident involving Friddle. She testified that she believed that what she interpreted as a refusal to do work indicated the refusal by Hayes to modify his attitude. Lentz terminated Hayes's employment on November 3, 2003. Patterson testified that he had nothing to do

with the termination.  Lentz testified that she did not consult with anyone in making the decision to terminate Hayes.

Hayes disputed during his testimony that he had committed the violations documented in his file, and testified that several of the notices documenting instances of discipline from EMS were either forged or altered.  Hayes emphasized in his brief that, though he was issued several discipline notices during his employment with EMS, he received a favorable performance evaluation in 1994.  Additional facts are noted below as needed, keeping in mind the standard that applies on a motion for summary judgment.

*Discussion*

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  Hayes advances two Title VII claims against EMS:  (1) he claims that EMS subjected him to sexual harassment in the form of a hostile work environment, and (2) he claims that EMS terminated him in retaliation for complaining about such harassment.

I.    *Scope of the EEOC Charge*

Before filing a Title VII claim, an individual must first "file a timely charge with the EEOC encompassing the acts complained of as a prerequisite to filing

suit in federal court." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985). A plaintiff attempting to bring a claim of discrimination, therefore, cannot bring such a claim if it was not included in his EEOC charge. *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This requirement serves two purposes: it gives the EEOC and the employer an opportunity to settle the dispute, and it puts the employer on notice of any charges. *Id.*

Because many people who bring EEOC charges do so without the assistance of counsel, the courts have held that allegations in a complaint are permissible so long as they are "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (*en banc*). To satisfy this requirement, the complaint and the EEOC charge "must, at minimum, describe the *same conduct* and implicate the *same individuals.*" *Cheek*, 31 F.3d at 501. "Normally, retaliation . . . and . . . harassment charges are not like or reasonably related to one another" to an extent that would "permit an EEOC charge of one type of wrong to support a subsequent civil suit for another." *Sitar v. Indiana Dep't of Transportation*, 344 F.3d 720, 726 (7th Cir. 2003) (internal quotations omitted). Where claims are "so related and intertwined in time, people, and substance," however, "that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act," instances not described in the EEOC charge may be considered. *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993).

Hayes's EEOC charge, filed May 15, 2004, states that he believed his assigned work hours were reduced and that his employment was terminated in retaliation for reporting unlawful conduct. Specifically, the charge states: "In September 2003, I reported to Tony Goody, Area Manager, that I was sexually harassed by Mr. Patterson," and described the first incident on which his harassment claim is based. See Hayes Dep. Ex. 17. Hayes's EEOC charge clearly describes the same conduct and implicates the same individuals as his harassment claim, and even references Patterson's alleged behavior as sexual harassment. This relationship between the two claims, clearly articulated in the charge, renders Hayes's harassment claim well within the scope of his EEOC charge. Hayes's charge provided information sufficient to put both the EEOC and EMS on notice of his claims. To find otherwise would be to impose on Hayes the kind of "strict and technical application" of the charge requirement that would undermine the remedial purposes of Title VII. See, *e.g.*, *Kristufek*, 985 F.2d at 368. Accordingly, the court considers the merits of Hayes's sexual harassment claim.

II.   *Hostile Environment*

One purpose of Title VII is to prevent any form of disparate treatment of women and men in employment, including instances of discriminatory harassment that permeate the work environment to the extent that workplace conditions are altered. *Holman v. Indiana*, 211 F.3d 399, 402-03 (7th Cir. 2000), citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), and

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). To survive summary judgment on his hostile work environment claim, Hayes must come forward with evidence that would allow a reasonable fact finder to conclude that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his sex; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and to create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Rhodes v. Illinois Dep't of Transportation*, 359 F.3d 498, 505 (7th Cir. 2004); *McPherson v. City of Waukegan*, 379 F.3d 430, 437-38 (7th Cir. 2004).

Hayes advances a claim of sexual harassment based on the actions of Patterson, his male supervisor. The Seventh Circuit has made clear that Title VII covers claims for same-sex harassment, but that a plaintiff alleging same-sex harassment must offer evidence that the harassment took place *because of* sex, not merely that the harassment included sexually-charged content. *Holman*, 211 F.3d at 402-03; *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1008-09 (7th Cir. 1999); see also *Hildebrandt v. Illinois Dep't of Natural Resources*, 347 F.3d 1014, 1034 (7th Cir. 2003) (harassment must have occurred because of the sex of the complainant). Title VII does not offer a remedy for the acts of the "equal opportunity harasser" because a person who treats all employees with disrespect is not doing so on the basis of sex and therefore is not treating males and females differently. *Holman* 211 F.3d at 403; see also *Shepherd*, 168 F.3d at 1011. In a case alleging same-sex harassment, a plaintiff may show that a harasser is

motivated by the plaintiff's sex by showing, for example, that (1) the harasser acted out of sexual desire directed only at members of the same sex, (2) the harasser engaged in the harassment out of hostility for members of the same sex in the workplace, or (3) the harasser treated men and women differently in the workplace. *Shepherd*, 168 F.3d at 1008-09.

Hayes has offered no evidence that Patterson's behavior was directed at him because of his sex. He has offered no evidence of disparate treatment of women and men in the workplace, such as evidence that Patterson directed such comments at males but not at females. He has offered no evidence or argument that Patterson directed his comments at Hayes out of contempt or hostility toward the presence of males in the workplace. Finally, while the content of the statements themselves might indicate they were motivated by some sort of sexual desire, there is no evidence in the record that would support the assertion that such sexual desire was directed at men alone. This lack of evidence indicating that Hayes was subject to Patterson's inappropriate actions and comments because of his sex leaves Patterson in the category of the "equal opportunity harasser," whose alleged actions, however contemptible, are untouched by Title VII. Because Title VII is not a general civility code, *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 808 (7th Cir. 2001), Hayes has failed to raise a genuine issue of fact as to whether Patterson's alleged offensive behavior violated Title VII by creating a sexually hostile work environment. In other words, Hayes has offered no evidence that would allow a jury to find that Patterson's actions toward him were

"because of . . . [Hayes's] sex." 42 U.S.C. § 2000e-2(a)(1). Accordingly, Hayes's hostile environment claim cannot survive summary judgment.

III.   *Retaliation*

Title VII also prohibits an employer from retaliating against an employee for engaging in a protected act, such as reporting discrimination or harassment. 42 U.S.C. § 2000e-3. Hayes claims that EMS retaliated against him for reporting what he believed to be sexual harassment by Patterson in the months leading up to his November 3, 2003 termination.

A plaintiff may prove his claim of retaliation using either the direct or indirect methods of proof. The direct method requires the plaintiff to show that he engaged in a protected activity and suffered a materially adverse employment action as a result. *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002). A plaintiff establishing a case under the direct method must normally show that (1) he engaged in a statutorily protected activity, (2) he suffered a materially adverse action, and (3) there exists a causal connection between the two. *Sitar*, 344 F.3d at 728. EMS argues that Hayes has failed to offer evidence supporting the first and third elements of a direct method case of retaliation.

An employee engages in a protected activity within the meaning of Title VII where the employee challenges an employer practice found not to actually violate

-13-

the law, so long as the employee acted with a sincere and reasonable belief that the practice was unlawful. *Hamner v. St. Vincent Hospital and Health Care Center*, 224 F.3d 701, 706-07 (7th Cir. 2000); see also *Hernandez v. HCH Miller Park Joint Venture*, 418 F.3d 732, 737 (7th Cir. 2005).

EMS argues that Hayes's complaint regarding Patterson's behavior could not have amounted to a protected activity, citing *Hamner*. Affirming Magistrate Judge Shields's grant of a motion as a matter of law against a retaliation plaintiff in *Hamner,* the Seventh Circuit found that the employee had no reasonable expectation that his complaints of sexual orientation harassment addressed a form of discrimination prohibited by Title VII because Title VII does not prohibit sexual orientation discrimination. *Id.* at 707. The court explained that a complaining employee has a reasonable expectation of unlawfulness within the meaning of Title VII even if the conduct complained of does not rise to the level of creating a hostile environment, so long as the complaint alleges some kind of conduct prohibited by Title VII. *Id.*

The Seventh Circuit's holding in *Hamner* controls the outcome in this case. Hayes's evidence regarding the complaint that he made to Lentz and Gooding indicates only that Hayes reported Patterson's comments and actions that took place while the two were cleaning at Learning Universe. See Hayes Dep. at 89-90. Hayes also testified that while he reported to White and Kardatzke that Patterson called him a "snitch," he did not report to them the details concerning the context

of this statement or Patterson's behavior at Learning Universe. *Id.* at 105-06. There simply is no indication in the evidence that Hayes reported that Patterson subjected him to harassing treatment because of his sex. Like Hamner's claims of sexual orientation harassment, Hayes's claim of sexually charged harassment without any assertion that such harassment was directed at him because he was a man cannot reasonably be considered to challenge conduct prohibited by Title VII. Accordingly, Hayes has failed to satisfy his burden under the direct method of offering evidence that he has engaged in a protected activity.

A plaintiff may also proceed using the indirect burden-shifting method articulated in *Stone*. To survive a motion for summary judgment on a retaliation claim under the indirect method, Hayes must present evidence that would allow a reasonable jury to find that (1) he engaged in a protected activity; (2) he performed his job in accordance with EMS's reasonable expectations; (3) he suffered a materially adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in the protected activity. *Stone*, 281 F.3d at 644; see also *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 861-62 (7th Cir. 2005). Summary judgment is warranted against a party who fails to offer evidence sufficient to establish an essential element of his case and on which he will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If a plaintiff establishes this prima facie case, the burden shifts to the defendant to advance a legitimate non-discriminatory reason for the adverse employment action. Once the defendant has done so, the burden shifts back to the plaintiff to show that the defendant's given reason is a pretext for retaliation. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). If the plaintiff fails to raise a genuine issue of fact as to any element of the prima facie case, or as to whether the defendant's stated reason is pretextual, his retaliation claim cannot survive summary judgment. *Id.*; see also *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 560 (7th Cir. 2004).

Hayes has not met his burden on summary judgment to offer evidence sufficient to support his retaliation claim under the indirect method. He has offered neither evidence nor argument that he was treated less favorably than a similarly situated individual who did not engage in a protected activity. Because no jury could reasonably find that Hayes has established his prima facie case of retaliation under either the direct method or the indirect method, EMS's motion for summary judgment as to this claim must be granted. *Hilt-Dyson*, 282 F.3d at 465; *Hudson*, 375 F.3d at 560.

IV.   *State Law Claims*

In addition to his Title VII claims, Hayes asserted in his complaint additional state law claims against EMS for wrongful discharge, intentional infliction of emotional distress, and negligence. Pl. Cplt. ¶¶ 18-25. EMS has moved for

summary judgment as to these state claims as well. See Def. Br. at 20-24. Hayes, however, failed to respond to EMS's arguments regarding his state law claims. Accordingly, such claims are deemed abandoned, and summary judgment is appropriate on Hayes's state law claims. See, *e.g.*, *Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (deeming plaintiff's Indiana negligent hiring claim abandoned where plaintiff failed to address the claim in either his response brief in opposition to summary judgment or in his appellate brief); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562-63 n.2 (7th Cir. 1996) (plaintiff abandoned Family and Medical Leave Act claim by failing to respond to defendant's arguments on summary judgment).

*Conclusion*

Hayes has failed to raise a genuine issue of material fact as to either his sexual harassment or retaliation claims. Additionally, he has abandoned any state law claims asserted in his complaint. For these reasons, EMS's motion for summary judgment as to each of Hayes's claims must be GRANTED. Final judgment shall be entered accordingly.

So ordered.

Date: July 11, 2006

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com

Susan Oliver
BOSE MCKINNEY & EVANS, LLP
soliver@boselaw.com

David Fredrick Rees
reesdf@aol.com